## UNITED STATES FASTENER CO. v. WERTHEIMER et al.

(Circuit Court, S. D. New York. July 19, 1906.)

### No. 8,879.

PATENTS—INVENTION—GLOVE FASTENER.

    The Douillet patent, No. 440,020, for the socket member of a glove fastener having a head of pearl or other material, is void for lack of invention, in view of the prior art, which showed the same construction of a button having a sheet-metal head.

In Equity. On final hearing.

John P. Bartlett and Donald Campbell, for complainant.
Livingston Gifford, for defendant.

PLATT, District Judge. This is a patent suit in the usual form, based upon alleged infringement of letters patent No. 440,020, dated November 4, 1890, to L. A. Douillet, for improvement in buttons. I quote the only claim:

"The socket member of a glove-fastener, consisting of a head of pearl or other material having an outwardly-flaring annular kerf, a flanged open-ended eyelet expanded by contact with the walls of said flaring kerf when pressed into its seat and retaining the material by means of the flange, and with a central cavity for the reception of a spring-stud, substantially as herein set forth."

The principal defense is lack of invention treated in a variety of ways, and in one aspect of the case noninfringement. It is undoubtedly an important matter and has been elaborately presented. It has been carefully examined, and I think that I have absorbed every phase of the contention as it strikes the opposing parties. I am, therefore, not disposed to apologize for the abbreviated form in which lack of further time compels me to couch some of the reasons which compel my final conclusion.

There was a time, not so very long ago, when the art with which this matter is connected was a difficult one, and when those steps which would in ordinary cases appear to be subtle refinements were in this one entitled to consideration as practical advances in invention. Whatever might have been said, however, as to the bearing of common eyelet buttons upon what the complainant claims is a distinct art, to wit, the snap-fastener art, was put at rest after Kent v. Simons (C. C.) 39 Fed. 606, had been decided and published. In that suit the complainant claimed under the Mead patent of September 1, 1885, No. 325,430. The defendant manufactured under the Raymond patent, No. 369,883, of September 13, 1887. The defense then relied upon was anticipation, shown in prior button patents, especially in the Capewell patent, February, 1869, the Hazeltine English patent of 1870, and the Huddart English patent of 1863. The Capewell and Hazeltine patents show an eyelet expanded in an outwardly flaring kerf, and Huddart shows solid heads composed of "pearl, ivory or bone," right alongside of the sheet-metal heads. This condition of affairs permeates the entire list of ordinary button patents. It was therefore plain that in the eyelet button art it was well understood how to permanently attach an eyelet to a solid pearl button by means of an annular flaring kerf with a central cavity. The citations therein failed by a hair's breadth of being adequate references, and Judge Colt gives the reason for that failure. The defendants had contended that the Mead patent was for an ordinary button, and that the use of it with a spring-stud was incidental. But the judge says that the principal object of the Mead invention was the "production of an improved button adapted for use with a spring-stud," and the addition of a shank and its use as an ordinary button was incidental to the dominant purpose. He thought that Mead had a new combination and an improved result; "that improvement consisting largely in the convenient form of the central opening for receiving the spring-stud, while at the same time preserving the button finish." So

147 F.—47

the Mead patent was adjudicated to be valid, and snap-fastener sockets became well known.

We may take the Raymond socket, which had been used by the defendant in Kent v. Simons, as a fair illustration. In this a sheet-metal head was used, and although the snap-fastener is made by "building up" through the use of several parts, the controlling idea of complainant's patent is present. It is the socket head of a glove fastener, and it has an "outwardly flaring kerf" and a flanged eyelet which expands by contact with the walls of the kerf, which, when pressed down into its seat, will be retained therein by means of the flange, and it has a central cavity to receive it. Nothing is lacking, except that the head is not of "pearl or other material," which may be said to include solid pearl, because the specification says so, although the claim does not. The complainant's argument is that he has simplified the Raymond construction, which argues invention, and that the Raymond device would not teach the ordinary mechanic how to use solid pearl or other material to attain the same result. Mr. Livermore, the expert who supports the patent in suit, was also the expert who supported successfully the Mead patent in Kent v. Simons, and in rebutting expert Bentley in that case he pointed out precisely the same features to distinguish the Mead patent from the prior art which he now uses to save the Douillet patent. All through this case it is plain that he expects the grace which saved the one to be now applied in favor of the other.

At the present day it is well understood in the art how to apply a spring-stud to the underside of a metal button by using a kerf and central cavity, and it is certainly no invention to do the same thing to a solid pearl button. The patentee's firm had the Raymond patent, and it is significant that almost as soon as they were defeated in Kent v. Simons he made an attempt to avoid both Mead and Raymond by application for the patent in suit. He must have known how thoroughly buttons and snap fasteners had become welded into a single art by the doings in that suit. His journey through the Patent Office was an interesting one. He was met by the button references, just as Mead had been. He made the same arguments to get away from the buttons, practically the same language was suggested to and accepted by him, and, in a word, he got at last substantially Mead's idea over again, with pearl in the place of sheet metal. If the Patent Office can be permitted to continue in such a complaisant humor as it was at the time of granting this patent, it would be rather easy in many cases to extend the grant of monopoly upon a bright idea long beyond the statutory term. I have traveled all the paths opened up to me in this suit, and at the end of each of them I reach the same conclusion.

Let the bill be dismissed.